Please proceed. Thank you. May it please the court, my name is Dan Siegel. I'm here arguing on behalf of the defendant appellants. The Landrum-Griffin Act was passed by Congress a little over 50 years ago to remedy instances of corruption and denial of democratic rights of union members by union officials. It was not passed, but was utilized in this case to allow union officials to implement a strategy of payback against members, officers, and employees of a local union who confronted, who argued with, and who violated the instructions of an international union which appeared to be bent on dismembering that local union. Mr. Siegel, one of the issues that we have to wrestle with is the question of fiduciary duty and who owes what to whom. Can you help me with that? Yes, I will. And I appreciate that question because it goes to the heart of our appeal and it addresses the problems with the jury instructions that the district court gave and which we clearly asked the court to remedy. The first issue is to whom is the fiduciary duty owed? There is not much law on this, but in a well-reasoned opinion of the Northern District of Indiana in Operating Plasters v. Benjamin, the district court, in analyzing the purposes and history of the Landry-Griffin Act, concluded that the fiduciary duty of union officials is owed to the local union which they serve, not to the international union. The problem I have with the district judge's reasoning in that case, though, seems to ignore any fiduciary obligation, forget about the word fiduciary, but any duty that those officials might owe under the international's constitution. We know, for example, that they must abide by the rulings of the International Executive Committee on Jurisdiction Questions, and I don't think they're disputing that. So it's almost a bifurcated duty, if you will. The question is what happens when they conflict? Well, again, I think that question goes to the heart of this case. There is no doubt that there are a series of duties that union officials owe each other, owe their members, and owe higher bodies. And there are remedies for violations of those duties. And I would not deny for purposes of this case, or any other purpose for that matter, that my clients and other officials of the UHW owe the duty to the international union to comply with the constitution and with directives of the international union made pursuant to that constitution. However, the argument here is what happens is that when there's a violation of that duty, it's very clear that under Section 301 of the Labor Management Relations Act, a claim for violation of that duty may be brought and prosecuted. And in fact, there was such a claim in this case. The Supreme Court and this Court, both in trial week and in its earlier decision in this Court, concluded that the remedy for a 301 violation was injunctive relief or other type of equitable remedy. So I think that answers your question. But I would go even further. As the record in this case indicates, Mr. Singel Breyer, and not damages. And not damages. And not damages, sir. But further, when a local union violates the dictates of the international union, the international union may, as it did in this case, place the local union under trusteeship. And so, again, my point is, is that the international is not without remedy for violations of the international constitution. But the jury found, and I recognize your challenge to the instructions, which I'm sure we'll get to, but the jury found that there had been a breach of that duty after, or actually before, and after the trusteeship was established through the actions that were intended to disrupt the trusteeship and essentially to disrespect the directive of the international that led to the establishment of the trusteeship. And for that, isn't a section 5 or I guess it would be a 411 claim for damages appropriate? Well, first of all, there was no 411 claim for damages. The only the district court and the plaintiffs decided at some point in this litigation to pursue damages under 501 only. Okay. And that's the case before us. My last point, though, on other remedies is that the international union, excuse me, under its constitution may remove officials of local unions and in some cases ban them from office. So I would just want to argue strongly that the lack of a fiduciary duty of the local union officials to the international does not leave the international without remedy in situations like this. But that remedy is ineffective given the fact that the defendants had already resigned. So there isn't any equitable relief that can be afforded after the fact. But then we're stuck with the jury determination that there was misconduct prior to in January for which damages were awarded for improper diversion of assets and staff time and salaries. That's correct. Under the district court's discussions, the period, and this I think is critical here, is the period for which damages were awarded began on January 9th and ended when the trusteeship was imposed on January 27th. And it's important in that context to understand what happened on January 9th. On January 9th, the International Executive Board essentially told my clients and the UHW that the conversation about transferring almost half of its members to another union was over and that they had to comply with it. And the record is presented by the plaintiffs below and which is described, I think, pretty thoroughly in our brief, is that despite that decision, between January 9th and January 27th, the defendants engaged in a series of actions. And at least some of those actions consisted merely of free speech activity. And in fact, the evidence, I think, again, giving the plaintiffs the benefit of every inference here, that the major activity the defendants engaged in, in terms of utilizing their own time and the resources of the union, was to organize meetings on January 24th, at which thousands of members around the State appeared and were given speeches and other information urging them to continue to oppose the transfer and to oppose what was seen as an impending trustee. Mr. Sigel, if that were all that was before us, this would be a very easy case to decide. The problem you've got is that we've got a jury finding that they did more than exercise First Amendment or free speech rights, whatever you want to call it. They actually obstructed the trusteeship by removing many, many boxes of documents that included open grievance files, active contracts, et cetera, which the district court ultimately had to enter equitable relief to order returned. So what do we do when there's a, in essence, a mixed motive may not be the right word, but a mixture of free speech and actual disruptive action? Well, Your Honor, I think what we have to do, and I think, again, that's really what this appeal is about, is we have to carefully instruct the jury so that it could distinguish between protected activities and unprotected activities. And we ask the district court, first of all, to make clear as to where the fiduciary duty lay. Secondly, we ask the district court to instruct the jury on authorization because our clients acted with the authorization of their own executive board, given on two occasions. And we ask the jury to distinguish, as the Second Circuit in Guzman and other courts have said, between actions which are consistent with the obligations of the union officials to abide by the wishes of their members and those which are corrupt or manifestly unreasonable. And am I correct that if I look at, beginning with Jury Instruction No. 15, Excerpt of Record 31, that that is where the district court began to instruct the jury in a series of instructions on what the duties were, what the improper actions were, and how they should sort of try to discern between the two? I'm looking at 15, 16, 17, 18. Exactly. And at the record, pages 43 to 47 are the arguments and authority that we provided to the district court in support of our arguments for modification of the district court's charge. And I think our proposals were consistent with the law and would have allowed the jury to, first of all, determine whether any of the violations our clients allegedly committed were merely violations of the union constitution for which no damages were available. Would have allowed the jury to, if it found that there were some actions which representative an alleged breach of fiduciary duty, to distinguish between those actions which were protected and those which were not. Well, I'm looking specifically at the language employed by the district court at ER 32, page 7 of the instructions, paragraph, I guess it's Jury Instruction No. 16, beginning at line 6, where the district court tries to explain that until a formal decision was made, they were free to, you know, to hold meetings and so on. But that after the decision on jurisdiction was announced, they were still free to state their disagreement with it so long as they didn't obstruct or frustrate the ability of the international to carry out the decision. What's wrong, as a matter of law, with the district court's language? Doesn't that accurately state the law? Well, first of all, I think obstruct and frustrate are very vague terms in this context. Free speech activity, which is designed to cause people to seek a result other than the result sought by those in authority, could easily be construed as obstructing or frustrating that result. But more concretely in the context of this case, Mr. Siegel, there's a difference between speech, which is intended to convince people, and action, which is intended to coerce people. Here we have blocking of access to the UHW buildings, removal of UH property from the buildings, including office equipment, computers, and employee grievance files. That's not speech. That's conduct. Isn't it? Your Honor, I agree. I have no disagreement with that point. But swept up in the court's instructions, for example, as I said earlier, and if you look at our opening brief at pages 18 to 25, where I think we fairly set out the evidence against us, the witnesses for the plaintiffs testified that what they spent a huge amount of their time doing in that period in January was organizing people to attend the January 24 meetings. And if you look at the context of the case in terms of what the jury was asked to consider when they were making decisions as to how much of my client's time and the resources of the union were diverted to improper purposes, that was the greatest part of the time. Now, to the extent to which time was spent blockading buildings or removing property from the union, to the extent to which the jury had been properly instructed, I would not have had an argument with an award of damages for that purpose. But I guess where I'm having a hard time understanding where the district court erred, we have to look at the instructions as a whole. And if I look at that language that I previously directed you to and then look at the language that Judge Bea just cited you to in the following jury instructions, considering all those instructions as a whole, isn't it sufficiently stated that the – there's a difference between speech and conduct? And here are examples of conduct which are not protected speech. Again, I agree. There is conduct alleged that is not protected speech. I don't think there's any disagreement about that, Your Honor. I think the point is, is that there was a lot of conduct that was protected speech. And the plaintiff's case was based upon showing that during January 2009, my clients  were not allowed to speak.   I don't think there's any disagreement about that. I think the point is, is that there was a lot of conduct that was protected speech, organizing people for meetings, getting people to sign petitions, educating people about why the international's decisions were incorrect. You mean the defendants, not the plaintiffs. But I guess from an appellate review standpoint, if I can't see any error in the manner in which the district court has articulated the law in the jury instructions and reading them as a whole, I think we then employ an abuse of discretion standard. How can we rule that Judge Alsup abused his discretion in formulating these instructions in the manner in which he has articulated them? We believe that the instructions, as we've set out, to the extent to which they're incorrect, misstate the law, are reviewable as a matter of law. Well, I understand that, but I guess I'm inviting you to tell me. You know, I read you some specific language or directed you on page 32 where he draws the distinction between free speech and conduct. That's a correct statement of the law, is it not? I think you agreed it was.  All right. And then if I look at some of these following instructions where there are specific examples given about what kind of conduct is not permissible, and there was certainly evidence that the jury heard about removal of computers and grievance and bargaining files and so on, why isn't that sufficient from an appellate court standpoint to say the jury had these instructions that told them how they should apply the facts as they found them to the law as it applied in rendering its verdict? In two specifics, number one, the – we asked the district court to make sure that the jury understood that it could not award damages for violations of the SEIU constitution. And a big part of the case, and in fact the district court's analysis of the case, was that my clients violated the January 9 directive of the International Executive Board to proceed with the transfer of members. And that, indeed, is why the clock started on January 9th. That decision to cooperate or to support or to stop opposing the transfer of members was solely a decision which implicated my clients' obligations under the SEIU constitution. But that gets back to the question we started with, and that is, what are the fiduciary duties and to whom are they owed? Because if I look at the SEIU's international constitution, I think it's ER, well, I'm not sure, 258, but at any rate, it's paragraph, subparagraph 7. It talks about dual unionism. And clearly, if you are helping to set up a rival union, that is a classic example of dual unionism, which is expressly prohibited in the SEIU constitution. And if we find as a matter of law that there is a fiduciary duty on the part of the officers of the local to abide by that international constitutional provision, why can't the jury determine that a fiduciary duty has been breached and imposed damages? Well, Your Honor, if you found as a matter of law that engaging in dual unionism was a breach of fiduciary duty, the Court would be making new law, law that is contrary to many decisions that we have cited to the Court, wherein courts, held courts and district courts have ruled that engaging in dual unionism may be grounds for dispelling someone from a union. If a local union engages in dual unionism, it may be grounds for trusteeship. It may be grounds for other remedies. But it is not a breach of fiduciary duty if the defendants can show, number one, their actions were authorized by their own union. Two, their understanding of their obligations was reasonable. Three, their actions were not corrupt. And fourth, their actions were not otherwise manifestly unreasonable. Counsel, Judge Gould, if I could interject a question. Judge Bea, to give you a little extra rebuttal time since I'm using up your time now. All right. Of the damages that were awarded for diversion of resources, I think that that's for when the officers got other people to work on their projects. What percentage of that do you believe, and do you have a basis in the record to explain this, related to either free speech activities or to issues about violation of union bylaws that you think aren't cognizable in damages? If I may, I would like to answer that question in two ways. Number one, it's impossible to distinguish based on the court's instructions how much of those damages assessed against the individual defendants were based upon, for example, as I mentioned earlier, organizing the January 24 meetings versus other activities. And I think the record, viewed in the light most favorable to the plaintiffs, indicates that the largest part of diversion of resources had to do with the defendants directing other union staff to organize these January 24 meetings. There is really, I believe, nothing in the record which indicates that any of the materials and so on. But the other thing I wanted to say about the verdict form, and I know time is running short, is that the verdict form, particularly with respect to the issue of diversion of resources, was interpreted to double the remedy or damages given to the plaintiffs. In the column of diversion of resources, 16 of the defendants are assessed a total of $720,000 for diversion of resources. In the bottom row, NUHW is also assessed $720,000. And one of the issues that we argue is that it's the same $720,000. Now, the instruction allowed the jury to find the defendants jointly and severally liable, and as I recall practice, you can only be jointly and severally liable in a single sum. Yeah. I agree, Your Honor. That's a statement of the law, but the jury was not so instructed. And so there's no way in which the jury could know that. What you're saying is that they're double counting. Right. And if I can just take a minute with respect to the NUHW portion of that. Because under the Court's instructions, NUHW was not liable for breach of fiduciary duty. It had no fiduciary duty. It was only liable under conspiracy or as a beneficiary of the individual's diversions. Under either case, if it were liable under conspiracy, which is what the plaintiffs asked the jury to find, then the $720,000 assessed against NUHW is the same $720,000. On the other hand, the alternate theory which was provided by the district court, other than conspiracy for assessing liability against NUHW, was that it was a beneficiary of the diversion of resources. And that now is the position that the plaintiffs are taking in this appeal, that NUHW was found as a beneficiary. Well, it could only be a beneficiary of the diversion of resources by the individual defendants. So if the individual defendants in total diverted $720,000 worth of resources and that's the amount which NUHW benefited from, then clearly it's double counting the $720,000. So I would like to reserve some time for rebuttal. I know I've gone over it already, but I appreciate it. Yeah, I kind of suggested that Judge Baird give you a few minutes for rebuttal. Two minutes for rebuttal. Since I interrupted you before you were done. All right. Mr. Siegel, you get three minutes for rebuttal. Great. Thank you very much. Good morning. May it please the Court. I'm Leon Diane. I'm here for the appellee. The legal principles that the plaintiff, in this case, NUHW, has been the legal principles that we've been seeking to vindicate and that we did vindicate in the jury trial and in the proceedings below are a set of very clear and straightforward principles. None of them are controversial. None of them present any novel question of law or novel expansion of existing duties. The first of those principles is that union has Well, I'm not so sure that's true with regard to the answer that I talked with Mr. Siegel about on fiduciary duties, who owes what to whom. That is hardly clear in labor law. Well, I'd like to address that. Okay. Please do. Yeah, I'll start with that. The claim that I think there's a semantic confusion. Oh, let me suggest, excuse me for interrupting. I see the clock isn't moving, and could the clerk start the time so it's running down? Okay, thank you. Oh, sure. Okay, so here our Section 501 LMRDA case, which was also joined with the California common law breach of fiduciary claim, was basically this, that the defendants, as officials of the UHW, which is obviously a local of the SEIU, governed by the SEIU's constitution. So our case, as officials of UHW, owed a fiduciary duty to expend UHW's funds and resources in accordance with all of the governing documents that bind local officers in their discretion to expend union resources. Among those documents are, of course, the UHW's own constitution, but also the international union's constitution. So if the international union constitution clearly states that you cannot expend resources of a local union, for example, on disaffiliation, or here we had a binding resolution January 9th that said that the local could not expend the local's resources on further interference with the jurisdictional decision, which had a command whose source is in an international document, but it's a command that is binding on it and that directs the conduct of the local officials in connection with their expenditures of resources. And we've always been very clear that there's no effort to find anyone liable for saying, I oppose this stupid decision, or I oppose this unfair decision. What we're saying they're liable for is directing the resources that they had commanded as senior officers of the local in contravention of binding documents that came from, to be sure, the SEIU. But there was no error in the instruction. The court accurately stated that there's a duty under the SEIU constitution insofar as a restriction of expenditure of funds. But it's almost like, I hate to use this analogy, but, you know, senior creditor claims in a bankruptcy. If you have conflicting fiduciary obligations to the international and to the local and its members, your argument has to be that it is the fiduciary duty to the international that is overriding, even if it might ultimately be to the detriment of the current members of the local. Well, the way the judge also conceived the issue I think was correct, which is that what the use of funds by a local officer is regulated democratically by the process that has them as a local of a larger organization. So if the SEIU constitution validly states, and no one's questioning that there's an invalid provision in the SEIU constitution or a facially invalid provision or a facially invalid order. So if the SEIU constitution or an SEIU binding resolution says, here's how you can spend your funds. We're not telling you how you can speak, but we're telling you how you can spend your funds. Then there is a fiduciary duty under the text of 501 to expend those funds in accordance with those directives and not contrary to them. And I can give you a case. And it's interestingly a case that opposing counsel. But Mr. Diane, 29 U.S.C. 501A says that spending of union money should be solely for the benefit of the organization and its members in accordance with its constitution and bylaws. Why isn't that properly interpreted to mean that any fiduciary duty owed by the officials is owed to the local, not to the international? The duty is owed to the local. There's no doubt about that. SEIU wasn't sinking a penny of damages in this case. We agree the duty that was breached was a duty owed to the local, the fiduciary duty that was breached. There may have been contractual duties breached, but those aren't part of the jury trial. The fiduciary duty that was breached was owed to the local. What was the breach? The breach was expending local funds in violation of the governing documents of the local. The local's constitution, like every local constitution I'm aware of, and certainly like, more importantly, this local constitution, states that the rules of the local are subordinate to the international. So there's a supremacy clause, basically. So the local, and Judge Alsop recognized this, the UHW Constitution states in its terms that it's subordinate to the SEIU Constitution. The SEIU Constitution controls. So a local union official cannot expend funds in violation of a restriction on the use of funds in both its and its parent's constitution. I have cases that support that. It's not ñ I didn't want to suggest that this was not novel if I didn't have cases. And one case is interestingly one that counsel cited in his statement here, and that is the Guzman v. Bivona case out of the Second Circuit, 90 F. 3rd, 641. And I'll read ñ there the charge was that a local official and people under his direction misspent funds on surveillance in violation of both the local's constitution and the international, and it happened to be an SEIU local in that case by coincidence. And the court said, expenditures by union officers that violate the union's constitutions, plural, that's in Bivona, Guzman v. Bivona, expenditures by union officers that violate the union's constitutions represent the classic case of breach of fiduciary duty under Section 501. So that's the principle we were seeking to enforce. It's a very straightforward one. And there's no cases to the contrary. I mean, the one case that counsel cites, which is the operating ñ operative plasterers v. Benjamin case, all that that court actually held when you get to the end of the decision is that the international union in that case and the local co-plaintiff weren't entitled to summary judgment or weren't entitled to judgment as a matter of law on a breach of fiduciary duty claim. And I think it's very relevant that in that case, when you get to the end of the discussion, the court there says that the local couldn't ñ that neither the local nor the international union plaintiff could identify any actual resources or funds of the local that the officer in question had misspent. He did give a disloyal speech, but there was no evidence that that caused any harm. And our whole case before the jury, of course, was about harm and misuse of resources. Counsel, if I could ask you a question, please. How can we be confident based on the jury instructions that were given that the amounts of damages that the jury set for diversion of resources relate to diversion of resources on activities that support cognizable claims, you know, not free speech activities? There's ñ I think you can be assured by the instruction itself, which the jury was presumed to follow and had ample evidence on following it to find those damage rewards. And that's the instruction that was being discussed before with ñ between Judge Tallman and counsel. That's jury instruction 16, which says, ìDefendants were free to state their disagreement with the decision so long as they did not obstruct or frustrate the ability of UHW or SEIU to carry out the decision and did not induce others to obstruct or frustrate the ability of UHW or SEIU to carry out the decision.î So you're not talking about a jury that was told it would be okay to find liability based on an impassioned speech at a rally. It was told that it could only find liability if it found that the defendants were doing something that actually obstructed or frustrated the ability of UHW to carry out its decisions and SEIU to carry out the decision. But can't you obstruct and frustrate by speech? Well, there's no ñ there's no indication from the context of the instructions that the jury was told that it was permitted to obstruct or frustrate by speech. And I would note that the instruction is worded to say, ìFrustrate the ability to carry out the decision.î So, you know, there was no theory. We weren't arguing, for example, that if ñ that a rally after the fact, after the January 9th decision that continued to protest that decision was obstructing or frustrating it. What was obstructing or frustrating the decision were acts like refusal to turn over documents, instructing members of the local and stewards not to cooperate with the trusteeship and not to cooperate with the jurisdictional decision, and so forth and so on. I won't rehearse all of them. They're well documented in the record. There was ample and overwhelming evidence of conduct that was improper. No evidence of any ñ or to suggest that the jury was taxing anyone for pure speech. And I would say this. Mr. Steele has talked about these January 24th meetings and the effort and expense put to organizing those meetings. What he leaves out is absolutely crucial. The whole theory of the plaintiffís case wasnít that there was anything wrong about organizing a meeting. The theory of our case, which was amply proved, was that these particular meetings werenít actually organized as pure protest meetings. These meetings were actually organized as tools to get the new union off to a running start. And what's the evidence of that? There's plenty of evidence. I'll give you two major pieces of evidence on that issue. The first is that the speeches that were made by Defendant Borges at one of the meetings is a perfect example, and I think we quote that one in our brief, so I'll focus on that. He stands up at the meeting and he says that, you know, does protest the jurisdiction and trusteeship decision, but then says that members have the right to disaviliate, they have the right to decertify UHW. And then he goes on and he says they even have the right to form a new militant democratic progressive union. So he's telling the members, well, he's still an officer of UHW. He's talking about a union that they claim they hadn't yet planned, which the jury could easily reject that. And what he's doing is he's using the meeting as a vehicle to encourage people to decertify UHW and form a new union. And it's obvious enough from the way that it's worded, but to make it even more obvious, we had videotape of the speech, and when he gets to the point that's controversial, he says, now, we as officers cannot advocate this. Everyone in the room laughs. It's in the record. So it was quite obvious what those meetings were about. Those meetings were not protest meetings. Those meetings were organizing tools for the new union. And here's another piece of evidence on that, if I may. At the Sacramento meeting, we have evidence from a witness who worked for the union both before and after the trusteeship. They were told to hand out yellow cards and to gather contact information for all the people who attended those meetings. In the ordinary course, that information is property of the local and is put into the local's database for use by the local. Well, what happened in this meeting was that when the meeting was over, one of the defendants, one of the defendants, you know, confederates, we would say, who was supporting NUHW, called the administrative assistant who is supposed to be in charge of collecting those cards and putting them in the database and told her to turn around and drive back to Sacramento and return that information to defendant Marti Garza. And the testimony was clear, and the jury certainly could believe it, that she turns around, she gives those cards to Garza, and the information never appears in the UHW database. It's never entered. It's taken. It's stolen. And then to cap that off, we had testimony from a witness who went to an NUHW organizing meeting a couple of weeks after the trusteeship in Sonoma County, and she's handed out a canvassing list from NUHW. And the canvassing list has a column with a code that tells you whether the person on the list attended the January 24th meeting. So our theory wasn't that there was anything wrong with holding one more protest meeting before the trusteeship. Our theory was that these meetings were not, you know, were actually created for the purpose of and were, in fact, used to get a rival union off to a running start. And sure enough, I mean, what happened after the trusteeship here is undisputed, which is that within days, there were thousands of decertification petitions circulated up and down the state within days. And the jury certainly could believe that the defendants were planning that, and it didn't happen in some sort of spontaneous moment of inspiration the morning after the trusteeship. So, you know, the judge also was very sensitive to the First Amendment. I would submit that the instruction was actually more favorable than it needed to be, because there's no LMRDA free speech right to spend union funds on anything. There is absolutely an LMRDA free speech right to speak out as a member, but there's no free speech right to expend funds of a local union on speech and contravention of an international constitution. Kennedy. Could we go to the damages question? Because I'm having a tough time determining how a judge can instruct a jury that they can find damages not only caused by the individual defendants listed on the jury form, but to which should be added those damages for which the defendant is jointly and severally liable. In my experience, if parties are jointly and severally liable, they're liable for the whole amount, not individual amounts. And what I'm having a hard time figuring out here is how individual amounts for which defendants are jointly and severally liable can vary. Well, here's our position on that. First of all, the jury was not instructed. And you can look at the instructions. There was no instruction telling the jury, you're forbidden from apportioning damages. And finding individual liable. No, but they were told that they could award damages not only to the damages that were caused by that individual, but for those damages could be added to that individual's amount that were for which the individual was jointly and severally liable. Now, if there was a conspiracy of everybody involved here, including the new union, right, it seems to me that there's adding on of jointly and severally liable portions, which are not broken down, because there's no individual and then jointly and severally liable portion added to that individual. And I think that the jury instruction is hopelessly confused on that subject. Let me address that in maybe reverse order of how it was addressed in our brief. First of all, the only claim, and I'll explain why I believe this is the only claim that has been made by the appellants here. The only claim made by the appellants is that there's only one way to read what the jury did. And it's in their favor. That's their argument. Their argument is not that, given the instructions and maybe perhaps some confusing language in them and the verdict form read together, there's multiple ways to read it. Their argument is that there's only one way to read it, and it's their way. And the reason I say that, and I think it's important, is that this Court has a decision in Yeti by Mollie, which we cite in our brief, and it's in accord with what other circuits do in these cases. What happened here is when the jury read its verdict, the judge also kept the jury there for, you know, a significant period of time while we were all reviewing the form. And he allowed both sides an opportunity to object or to send the jury back if there was any confusion. And the defendants did not take that opportunity. And Yeti by Mollie is just squarely on point on this. It says if there's a jury verdict that arguably, that might possibly have included some double counting, the chance to correct that is while the jury is still there. And if you don't take that chance, you've waived the argument. That's why I believe the defendants are trying to say it's unambiguous, because they know that under the rule of this circuit, if there's a vagueness or ambiguity, it has to be raised when the jury can cure it. And they let the jury go. But let me ask you this, for instance. Let's take the first, Mr. Borsos. He's found to have diversion of resources. I take it that he is liable for diverting the resources of UHW, right? Correct. In the amount of $60,000. How much of those $60,000 did Borsos divert, and how much of the $60,000 represents the diversion of resources for which he is jointly and severally liable as a co-conspirator? The way that we read the verdict, and even that the defendants read the verdict as it came out, because they put out a press release interpreting it that same day, which is in the record, is that given the way we were arguing the case, which was that we had argued there was a conspiracy, and there's excerpts from the closing arguments on that, but we also argued that the jury didn't have to find conspiracy because the judge said they didn't have to find it. And we said if you don't find conspiracy, then award individual liability. So the way that everyone interpreted the verdict was that the jury must have rejected conspiracy as a basis for liability and decided to come up with a total damage figure and then apportion it defendant by defendant so that, you know, so that each defendant was liable only for the amount that they thought the defendant should pay. Now, the question is, is it possible that the jury might have done something different? I would concede that it's not impossible. But if that's your theory, how does the National Union of Healthcare Workers divert $720,000 to themselves when they're not even members of the union, the UHW? But the theory on NUHW is different from the theory on the individuals. The theory on NUHW is different. Now we go back to conspiracy? No, no. It's Instruction 28. There were two bases. In Instruction 28, it says, If you find that NUHW acting through its agents was part of a conspiracy, then you may find NUHW liable for conspiracy damage as described above. And then the Court says, Alternatively, regardless of conspiracy, if you find that one or more individual defendants violated his or her duty to UHW and further find that NUHW knowingly benefited from said breach of duty, then NUHW is liable to the same extent to said defendants. NUHW has no duty to UHW. That's correct. And that was a conjunctive phrase, not disjunctive. And? And further find that NUHW knowingly benefited. So we have them. So, I mean, just knowingly benefited is not enough. It has to be a conspirator. Oh, no, no, no, no, no. There were two alternative theories. This is undisputed between the parties. One theory was conspiracy. The second theory was alternatively regardless of conspiracy, if you find that there was a breach of duty by one of the individual defendants. But you – but NUHW didn't owe any duty to UHW, did it? No, but it had a duty under California law. Hold on. It had a duty under California law not to knowingly participate in a fiduciary breach or knowingly accept the fruits of a fiduciary breach. I get it. On a destructive trust theory? We had a – we had a burden of showing that NUHW, you know, existed and knowingly benefited, and we met that burden. And the judge allowed that theory to go forward. We put it in our amended complaint. And there's not any question on appeal – this is important – there's not any question on appeal that that theory is an invalid theory under California law. The only issue is what did the jury verdict mean. And our submission is that given that instruction – and I would admit that instructions could have been more clear, but under Yeti by Mali, the law is crystal clear, and we could cite other circuit authority for this if you'd like, that when you have a verdict that has a damaged figure, either from multiple claims or multiple defendants, and it's theoretically possible that there was not apportionment and that there was an effort to have overlapping liability, but where it's also possible that it was apportionment, the party that is dissatisfied with the ambiguity needs to complain in a timely way, and that just didn't happen here. And, you know, I think the judge who was there at the trial understood what the verdict meant in the context of how it was argued. But again, even if it's theoretically possible the jury was thinking something else, it's too late for that issue to be vented. It's too late for you because your times are not up. Thank you very much. Mr. Siegel, three minutes. Okay. So let me be very brief. First of all, again, to go back to the fiduciary duty issue, conceding that there is a situation where a violation of a directive could be a breach of fiduciary duty, which I think was the question that Judge Tallman was asking earlier, then if that's the theory, the defense has to be provided in instructions. And that's what Guzman says. You could assume theoretically that it's a breach, but it's not a breach if it is authorized if it is not corrupt and it is not manifestly unreasonable. So that's what, to the extent to which the theory of the case was the breach consisted of violating the international constitution, which in the circumstances of this case could be a breach of fiduciary duty, then we were entitled to instructions on our defense. You know, there is, I believe, a lot of ambiguity in the SEIU's arguments as to what the damages are for. And, of course, what they want to stress are things like taking property or blocking doors and so on. The SEIU took the position in the case that it was not seeking damages for any of those activities. And on page 65 of our opening brief, we quote counsel for the SEIU saying that there is no claim for damages based upon destroying files or taking files or delaying collective bargaining activity. So, again, the only alleged breach is how the defendants used their time and the time of others. And I guess then it gets back to the issue of joint and several liability. You know, Mr. Borsos is actually the only person whose salary appears in the record of the case. And the damages expert for SEIU says that Mr. Borsos' salary during this period was $11,000 and change. The jury found on the diversion that he had diverted his own salary for improper purposes during this 18-day period of $6,600. Then they repeated that same figure all the way down that column for each of the other liable defendants, with the exception of Emily Gordon, where they cut it roughly in a quarter because she only worked for the union during about a quarter of that time. So, again, I think that there was no ambiguity when the verdict was rendered. It only became an issue where the – when the court, in rendering judgment after the jury was dismissed a day later, added up all the figures. So you would interpret this verdict as saying that the prevailing union is entitled to salary and benefits damages, if at all, in the amount of $6,600, period, for that column? I believe that that is consistent with the instructions and the coincidence of the same figure. Going on to diversion of resources at $60,000. $60,000. $60,000 tops. And then increased security, $7,250. Correct. And lost dues, $4,000. That's right. Which we can all add up to about $70,000. That's correct. All right. Thank you. Thank you very much. The case of SEIU v. NUHW is submitted. And we thank counsel very sincerely for their illuminating and well-developed arguments. Thank you. And court is adjourned until tomorrow morning at 9.30 a.m. Thank you. Thank you.
judges: Gould, Tallman, Bea